UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
POINTERS, CLEANERS & CAULKERS
ANNUITY FUND, PENSION FUND and
WELFARE FUND, JOINT
APPRENTICESHIP TRAINING FUND,
INTERNATIONAL MASONRY
INSTITUTE, BRICKLAYERS
INTERNATIONAL PENSION FUND,
BUILDING RESTORATION INDUSTRY
PROMOTION FUND, and JACK
ARGILA, in his fiduciary capacity as
Trustee, BRICKLAYERS AND ALLIED
CRAFT WORKERS LOCAL UNION NO.
1, INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFT
WORKERS and LABOR MANAGEMENT
RELATIONS COMMITTEE,

**REPORT AND
RECOMMENDATION**
24-CV-8501 (NCM) (TAM)

                    Plaintiffs,

       -against-

AVALANCHE CONSTRUCTION
GROUP, INC. and MICHAEL
JABLONOWSKI,

                    Defendants.
----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiffs Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund and

Welfare Fund, Joint Apprenticeship Training Fund, International Masonry Institute,

Bricklayers International Pension Fund, Building Restoration Industry Promotion Fund,

and Jack Argila, as Trustee for the Bricklayers and Allied Craft Workers Local Union

No. 1, International Union of Bricklayers and Allied Craft Workers ("Local 1" or the

"Union"), and Labor Management Relations Committee, commenced this action against

Defendants Avalanche Construction Group, Inc. ("Avalanche" or the "Corporate

Defendant") and Michael Jablonowski ("Jablonowski" or the "Individual Defendant")

on December 12, 2024. Compl., ECF 1. Plaintiffs seek to recover delinquent employer benefit contributions, union assessments, dues, and related relief, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Id.* ¶ 1; *id.* at 13–15.

Currently pending before the Court is Plaintiffs' motion for default judgment, which the Honorable Natasha C. Merle referred to the undersigned Magistrate Judge for a report and recommendation. *See* Clerk's Entry of Default, ECF 11; Pls.' Mot. for Default J., ECF 15; July 25, 2025 ECF Order Referring Mot. For the reasons set forth below, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**I.  Factual Background**

Plaintiffs Pointers, Cleaners & Caulkers Annuity Fund ("Annuity Fund"), Pension Fund ("Pension Fund") and Welfare Fund ("Welfare Fund"), Joint Apprenticeship Training Fund ("JAT"), International Masonry Institute ("IMI"), and Bricklayers International Pension Fund ("IPF") (collectively, the "ERISA Funds") are employee benefit plans and multiemployer plans organized under ERISA. Compl., ECF 1, ¶¶ 4–5. The ERISA Funds are administered in Queens County, New York, which is within the Eastern District of New York. *Id.* ¶ 4. Plaintiff Argila is a trustee of the ERISA Funds and is therefore authorized to bring actions to enforce the Union's collective bargaining agreement ("CBA") under Section 502(d)(1) of ERISA. *Id.* ¶ 12; 29 U.S.C. § 1132(d)(1).

Defendant Avalanche is a party to a CBA with Local 1, which agreement established the ERISA Funds. *Id.* ¶¶ 4, 6, 10. Plaintiffs allege that Defendant

2

Jablonowski is the owner and president of Avalanche and thus "exercises authority or control respecting the management or disposition of plan assets." *Id.* ¶¶ 6–7. The complaint alleges that Jablonowski is also a fiduciary under ERISA. *Id.* ¶¶ 45–49.

Under the CBA, Defendant Avalanche agreed to make specified benefit contributions to the ERISA Funds and to non-ERISA funds, and to remit dues and assessments to the Union "for all hours worked by its employees" within the Union's jurisdiction.[1] Compl., ECF 1, ¶ 10; *see also* 2019–2023 CBA, ECF 15-7, at 21–31. The CBA also requires Avalanche to submit monthly remittance reports, and to allow the Funds to audit its books and records to verify the accuracy of the remittance reports and the employer's compliance with the CBA. Compl., ECF 1, ¶ 15. Accordingly, an audit was conducted for the period January 1, 2019, through September 30, 2022 (the "2019–2022

---

[1] Of the funds to which specified benefit contributions are due, counsel affirms that the ERISA-covered funds are the Welfare Fund, Pension Fund, Annuity Fund, JAT Fund, IMI Fund, and IPF, and the non-ERISA funds are the Labor Management Relations Fund, Promotion Fund, BAC Local #1 Defense & Organizing Fund, BAC Local #1 BAC PAC, IPF PPA Special Assessment, and International BAC PAC. *See* Straus-Figueroa Suppl. Affirmation., ECF 24, ¶ 4. The Court notes that Plaintiffs do not explicitly specify whether the Retirement Fund, delinquent contributions to which Plaintiffs also seek, is an ERISA or non-ERISA fund. *See id.*; *cf.* Payment Schedules, ECF 24-2, at ECF pp. 3–7.

The Court further observes that although counsel's affirmation avers that the IPF PPA Special Assessment is not covered by ERISA, Plaintiffs' calculation of prejudgment interest categorizes it as an ERISA fund. *See* Revised Calculations, ECF 24-1 (calculating the ERISA rates as $31.05 and $32.30, a result which the Court was only able to recreate by including the IPF PPA Special Assessment rate with the other ERISA rates, *contra* counsel's other submissions, and the Retirement Fund with the non-ERISA rates); *see also Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.* ("*Alpha Omega Bldg. Corp.*"), No. 19-CV-2600 (ERK) (RLM), 2022 WL 18858966, at *7 n.12 (E.D.N.Y. Nov. 10, 2022) (admonishing Plaintiffs for "failing to properly explain the basis for their inclusion of" the IPF PPA Special Assessment in their submissions). After a review of the case law — which the Court was "under no obligation" to do, *Alpha Omega Bldg. Corp.*, 2022 WL 18858966, at *7 n.12 — the Court concludes that the IPF PPA Special Assessment is covered by ERISA, *see Bricklayers Ins. & Welfare Fund v. McGovern & Co.*, LLC, No. 17-CV-6067 (SJ) (ST), 2019 WL 2271942, at *4 (E.D.N.Y. Mar. 6, 2019) (identifying the IPF PPA Special Assessment as an ERISA plan), *report and recommendation adopted as modified*, 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019); *Bricklayers Ins. & Welfare Fund v. Inniss Constr., Inc.*, No. 19-CV-7094 (DLI) (LB), 2021 WL 7208994, at *6 (E.D.N.Y. Oct. 5, 2021) (same), *report and recommendation adopted*, Oct. 25, 2021 ECF Order Adopting R. & R.

period"), which revealed that Avalanche owed $204,941.00 to the Funds; at some point later, Avalanche paid $49,000.00, leaving a balance due of $155,941.00. Audit Report, ECF 22; Pls.' Mem. in Supp. of Mot. for Default J. ("Pls.' Mem."), ECF 15-20, at 3; *see* Compl., ECF 1, ¶ 16.[2] Per the complaint, Avalanche also failed to provide remittance reports for the months of December 2023 through February 2024 and September and October 2024 (the "2023–2024 period"), in violation of the CBA. *Id.* ¶¶ 26, 36.

Under the terms of the CBA, if the employer fails to submit to an audit, "the Trustees are permitted to estimate contributions due and owing by using the highest number of employer's monthly hours for any month during the twelve (12) preceding months or during the last twelve (12) months for which contributions reports were filed, whichever monthly number of hours is greater." *Id.* ¶ 27; *see* CBA, ECF 15-7, Art. XV § 7. Plaintiffs allege that the month with the highest monthly number of hours in the relevant 12-month period was October 2023, when 736 hours were reported. Compl., ECF 1, ¶ 28. Using the applicable hourly rates for the benefit contributions for the months at issue, Plaintiffs calculate the total sum owed for the months of December 2023 through February 2024 and September and October 2024 as $129,771.52. *Id.* ¶¶ 29–30.

Plaintiffs allege that under §§ 409 and 502 of ERISA and § 185 of the LMRA, Defendants are liable for (1) $155,941.00 in delinquent contributions and union assessments for the 2019–2022 period; (2) $129,771.52 in delinquent contributions and

---

[2] The Court notes that in the complaint, Plaintiffs originally alleged that the audit had revealed a total sum of $210,541.00 due for 2019–2022, of which $49,000.00 had been paid. Compl., ECF 1, ¶ 16. Although the Court reviews the sufficiency of Plaintiffs' pleadings based on the complaint alone, the Court uses the updated damages amount throughout this opinion for ease of reading.

union assessments for the 2023–2024 period; (3) interest on any unpaid contributions and assessments at the rate of 10 percent per year; (4) statutory damages totaling 20 percent of the amount of delinquent ERISA contributions; and (5) attorney's fees and costs. *Id.* ¶¶ 19, 30, 35–37, 42, 50; *id.* at 13–14 (wherefore clause). In their motion for default judgment, Plaintiffs additionally request that Defendants pay the audit cost of $5,600.00. *See* Pls.' Mem., ECF 15-20, at 9–10; *see* Straus-Figueroa Aff., ECF 15-3, ¶ 33.

## II.  Procedural History

As noted above, Plaintiffs filed the complaint in this case on December 12, 2024; summons was issued that same day. Compl., ECF 1; Summons, ECF 2. On January 27, 2025, Plaintiffs filed proof of service, indicating that Defendant Avalanche was served via the Secretary of State on January 3, 2025, rendering its answer due January 24, 2025. Proof of Service, ECF 5. No answer was filed by that date, and on January 28, 2025, the Court extended Defendant Avalanche's time to answer to February 18, 2025. Jan. 28, 2025 ECF Order. On February 5, 2025, Plaintiffs filed another proof of service, indicating that Defendant Jablonowski was served on February 3, 2025, via his sister, A. Jablonowska, at that Defendant's residence, rendering his answer due February 24, 2025. Proof of Service, ECF 7. Neither Defendant Jablonowski nor Defendant Avalanche filed an answer, and on February 25, 2025, Plaintiffs filed a status report indicating their intent to file a motion for default judgment. Status Report, ECF 8.

No action having been taken, on March 28, 2025, the Court directed Plaintiffs to initiate default motion practice by April 28, 2025, or risk dismissal for failure to prosecute under Federal Rule of Civil Procedure 41(b). Mar. 28, 2025 ECF Order. On April 3, 2025, Plaintiffs requested a certificate of default, which was denied the following day for lack of a certificate of service under Local Rule 55.1(a)(4). *See* Req. for Certificate of Default, ECF 9; Apr. 4, 2025 ECF Notice. On April 4, 2025, Plaintiffs

5

renewed their request for a certificate of default, which was entered on April 7, 2025. Req. for Certificate of Default, ECF 10; Clerk's Entry of Default, ECF 11.

Another three weeks passed without action by Plaintiffs, and on May 1, 2025, the Court directed Plaintiffs to file their anticipated motion or a status report by May 22, 2025. May 1, 2025 ECF Order. On May 22, 2025, Plaintiffs filed a status report, indicating their intent to "expand outreach in a last effort to resolve this matter amicably," and to move for default judgment no later than June 27, 2025. Status Report, ECF 13. On June 26, 2025, Plaintiffs filed a further letter, advising that they were unsuccessful in resolving the matter, and requesting an extension to file the default motion, which the Court granted. Letter, ECF 14; June 30, 2025 ECF Order. On July 24, 2025, Plaintiffs filed their motion for default judgment. Mot. for Default J., ECF 15.

On July 28, 2025, Plaintiffs moved to seal Exhibit H to their default motion — a copy of the 2019–2022 period audit report, which inadvertently contained workers' personal identifying information — and filed a purportedly redacted version of the audit report. *See* Mot. to Seal, ECF 16. The Court granted Plaintiffs' motion to seal and later entered an order, at Plaintiffs' request, directing PACER to provide audit trails or other records regarding the unredacted document. July 29, 2025 ECF Order; Letter, ECF 17; Order, ECF 18.

On October 3, 2025, the Court scheduled a default motion hearing for November 10, 2025, which was later rescheduled to November 17, 2025. Oct. 3, 2025 ECF Scheduling Order; Oct. 8, 2025 ECF Rescheduling Order. Both scheduling orders were mailed to Defendants at Avalanche's last known business address registered with the New York Secretary of State, which was also Jablonowski's last known residence. *See* Oct. 3, 2025 ECF Scheduling Order; Oct. 8, 2025 ECF Rescheduling Order. Defendants

did not appear at the telephonic default motion hearing on November 17, 2025, and the Court took Plaintiffs' motion under advisement. Nov. 17, 2025 ECF Min. Entry & Order.

One month later, the Court discovered that the purportedly redacted version of the audit report that Plaintiffs had filed with their motion to seal was not, in fact, properly redacted; when downloaded from PACER, the Court was able to remove the redactions, revealing personal identifying information. *See* Dec. 23, 2025 ECF Order. The Court removed the attachment from the docket and directed Plaintiffs to refile the audit report with permanent redactions by January 6, 2026, along with a revised request for total prejudgment interest owed through December 31, 2025, a proposed per diem rate at which prejudgment interest shall continue to accrue through the date of final judgment, and an updated calculation as to Plaintiffs' request for liquidated damages. *Id.* On January 5, 2026, Plaintiffs filed the requested documents. *See* Mots. to Amend, ECF 22, 23. On January 6, 2026, the Court directed Plaintiffs to file another supplemental submission, this time identifying the hourly fringe benefit contribution rates underlying their damages calculation for the entire period for which they request damages. *See* Jan. 6, 2026 ECF Order. On January 16, 2026, Plaintiffs filed the requested supplements. *See* Mot. to Amend, ECF 24.

## DISCUSSION

### I.  Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(a)–(b); *see also* E.D.N.Y. Loc. Civ. R. 55.2(c). A

7

"plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.* ("*Universal Elec.*"), 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[3] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district

---

[3] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiffs' motion papers comport with these rules. First, Plaintiffs requested a certificate of default in accordance with Local Rule 55.1(a)(1), which was mailed and emailed to the last known address for Defendants. *See* Req. for Certificate of Default, ECF 10; Certificate of Serv., ECF 10-3 (certifying mailing of Request for Certificate of Default). Second, Plaintiffs have demonstrated that Defendants have failed to defend the action and that the pleadings were properly served. Straus-Figueroa Aff., ECF 15-3, ¶ 2 (stating that neither Defendant is in the military, incompetent, or an infant); *see also* Affs. of Serv., ECF 5 (establishing service on Corporate Defendant by service on the New York Secretary of State), ECF 7 (establishing service on the Individual Defendant by person of appropriate age and discretion at his last known residence). Third, Plaintiffs have certified the mailing of all of the default motion papers to the Corporate Defendant's last known business address and Individual Defendant's last known residence, in accordance with Local Rule 55.2(a)(3). *See* Certificate of Serv., ECF 15-21.

court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "[p]laintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed affidavits." *J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 663 (E.D.N.Y. 2019) (citing *CIT Bank, N.A. v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Trac Constr. Grp., Inc.*, No. 22-CV-1935 (ENV) (RER), 2022 WL 7810540, at *4 (E.D.N.Y. Oct. 4, 2022) ("In ERISA cases seeking an award of damages after a finding of liability, Courts frequently rely solely on the affidavits, reports, and other documentary evidence submitted by [the] plaintiffs." (quotation marks omitted)), *report and recommendation adopted*, Dec. 21, 2022 ECF Order Adopting R. & R. In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

## II. Analysis

### A. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of a default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has

9

a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.* ("*Duce Constr. Corp.*"), No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

### 1. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g., United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *Antoine*, 489 F. Supp. 3d at 81.

Defendants' failure to respond or otherwise appear in this action supports a finding of willfulness. The Court notes that Plaintiffs adequately served the Corporate Defendant by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. *See* Aff. of Serv., ECF 5; N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1) & (h)(1); *see also Jean-Louis v. Warfield*, 898 F. Supp. 2d 570, 574 (E.D.N.Y. 2012) (explaining that New York law permits service upon a corporation via the New York Secretary of State). Plaintiffs adequately served the

10

Individual Defendant via service on a person of suitable age and discretion, his sister, at his residence. *See* Aff. of Serv., ECF 7; Fed. R. Civ. P. 4(e)(2)(B). Defendants failed to respond within 21 days of service. *See* Affs. of Serv., ECF 5, ECF 7; Straus-Figueroa Aff., ECF 15-3, ¶ 6. Defendants likewise failed to respond after Plaintiffs moved for default judgment and after Defendants were sent notice of the motion both from Plaintiffs and the Clerk of Court. *See* Certificate of Serv., ECF 15-21 (certifying service of Plaintiffs' motion for default judgment, memorandum of law, and supporting declarations and exhibits, by mail to Defendants); Oct. 3, 2025 Scheduling Order; Oct. 8, 2025 Rescheduling Order; *see also* Nov. 17, 2025 Min. Entry & Order (indicating that there was no appearance on Defendants' behalf at the default motion hearing). In light of Defendants' failure to respond, notwithstanding the provision of notice at least three times regarding this proceeding, the Court weighs this factor in favor of default.

  2. *Meritorious Defense*

  "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

  3. *Prejudice*

  "The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a

11

motion for default is prejudicial to the plaintiffs where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendants' failure to respond to both Plaintiffs' and the Court's notices, "there is no indication that requiring Plaintiffs to take further steps . . . would be effective in eliciting a response from Defendants." *Duce Constr. Corp.*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiffs would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiffs' motion, the Court recommends entering a default judgment.

## B. Liability

Plaintiffs have also adequately alleged Defendants' liability in this matter. Specifically, Plaintiffs allege that Defendant Avalanche (1) violated its obligations under the CBA and ERISA by failing to make required contributions to the funds, and (2) violated the CBA by failing to timely remit reports, contributions, union assessments, and dues check-offs to the Union. *See* Compl., ECF 1, ¶¶ 13–19 (January 1, 2019, through September 30, 2022), 25–30 (December 2023 through February 2024 and September 2024), 36 (December 2023 through February 2024 and September 2024 through October 2024). Plaintiffs further allege that Defendant Jablonowski is personally liable for these violations as a fiduciary under ERISA. *Id.* ¶¶ 43–50. The Court addresses these claims in turn.

12

*1. ERISA Violations*[4]

Plaintiffs allege that Defendant Avalanche, an employer bound by the CBA, violated ERISA by failing to make required contributions to the ERISA Funds. Under Section 515 of ERISA,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *see also id.* § 1132(g)(2) (stating, *inter alia*, that if there is a judgment in favor of a "fiduciary for or on behalf of a plan" seeking to enforce Section 515, "the court shall award the plan . . . the unpaid contributions," as well as "interest on the unpaid contributions [and] liquidated damages" according to the "rate provided under the plan"). Relatedly, Section 301 of the LMRA provides a federal cause of action for "violation[s] of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations." 29 U.S.C. § 185(a). Where an employer fails to make required contributions, plan fiduciaries can bring a civil action to enforce the terms of the CBA. *See* 29 U.S.C. § 1132(a)(3).

Plaintiffs have adequately demonstrated their entitlement to such relief. In this case, Plaintiffs allege in the complaint that Defendant Avalanche is an employer as

---

[4] The Court notes that Plaintiffs' claims are timely. "In lieu of an ERISA-specific limitations period, courts normally apply the limitations period specified 'in the most nearly analogous state limitations statute,'" *i.e.*, New York's six-year statute of limitations for contract actions. *Landry v. Metro. Life Ins. Co.*, No. 19-CV-3385 (KPF), 2021 WL 848455, at *7 (S.D.N.Y. Mar. 5, 2021) (quoting *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam) (citing N.Y. C.P.L.R. § 213)). The same statute of limitations applies to ordinary LMRA claims. *See O'Hare v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 167–68 (2d Cir. 1984); *see also Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 338–41 (E.D.N.Y. 2009). Plaintiffs' claims fall well within the applicable six-year period.

defined by ERISA.[5] Compl., ECF 1, ¶ 6. Plaintiffs further allege that the ERISA Funds are multi-employer employee benefit plans governed by ERISA to which Avalanche was obligated to contribute under the CBA. *Id.* ¶¶ 4, 6. This action was brought by fiduciaries of the ERISA Funds, *i.e.*, their trustees, as provided for under 29 U.S.C. § 1132(a)(3). *See id.* ¶ 5. Moreover, Plaintiffs have alleged that Defendant Avalanche failed to submit contributions or reports detailing the number of hours of covered work performed by Avalanche's employees during certain periods from January 2019 through October 2024. *Id.* ¶¶ 15–18 (January 1, 2019, through September 30, 2022), 25–30 (December 2023 through February 2024 and September 2024), ¶ 36 (December 2023 through February 2024 and September 2024 through October 2024). In the absence of timely and accurate remittance reports, Plaintiffs seek to collect contributions in accordance with the terms of the CBA. *See id.* ¶ 27; *see also* 2019–2023 CBA, ECF 15-7, Art. XV § 7. In light of Plaintiffs' allegations that establish their entitlement to relief, the Court recommends finding Defendant Avalanche liable as to this ERISA claim and awarding damages, including unpaid contributions, interest, liquidated damages, and attorney's fees and costs, as detailed below.

## 2. *Breach of the CBA*

As set forth above, Plaintiffs also allege that Defendant Avalanche breached the CBA by failing to timely submit remittance reports, contributions, union assessments,

---

[5] "An ERISA 'employer' is defined as 'any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan.'" *Silverman v. Teamsters Loc. 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 285 (2d Cir. 2014) (quoting 29 U.S.C. § 1002(5)). "The term 'multiemployer plan' means a plan — (i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary [of Labor] may prescribe by regulation." 29 U.S.C. § 1002(37)(A).

and dues check-offs. More specifically, Plaintiffs assert that Defendant Avalanche failed to remit contributions, union assessments, and dues owed under the CBA from January 2019 onward. *See generally* Compl., ECF 1. Plaintiffs further assert that from October 2022 onward, Defendant failed to timely submit remittance reports. *Id.* ¶¶ 11, 26–30.

The LMRA authorizes suits in federal court "for violation[s] of contracts between an employer and a labor organization[6] representing employees." 29 U.S.C. § 185(a); *see also Annuity, Pension, Welfare, Training and Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B v. Regal USA Concrete, Inc.*, No. 23-CV-1208 (FB) (RML), 2023 WL 7413837, at *2 (E.D.N.Y. Sept. 28, 2023), *report and recommendation adopted*, 2023 WL 6865599 (E.D.N.Y. Oct. 18, 2023). Accordingly, where an employer violates the terms of a CBA, a "labor organization may sue . . . in behalf of the employees whom it represents." 29 U.S.C. § 185(b).

Plaintiffs have adequately alleged entitlement to relief under the LMRA. Per the allegations in the complaint, the Union is a qualifying labor organization, the CBA is a contract between the Union and Defendant Avalanche (an employer), and Defendant Avalanche was bound by the CBA at all relevant times. Compl., ECF 1, ¶¶ 4, 6, 10; *see* Straus-Figueroa Affirmation, ECF 15-3, ¶¶ 11, 14; *see also* CBA Signature Page, ECF 15-17; *see also generally* 2019–2023 CBA, ECF 15-7. As alleged in the complaint, under the CBA, Defendant Avalanche was required to pay specified contributions and to timely submit remittance reports, as well as payments for contributions to the ERISA and non-

---

[6] A "'labor organization' means any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

ERISA funds, union assessments, and dues check-offs. Straus-Figueroa Affirmation, ECF 15-3, ¶¶ 16–18 (citing 2019–2023 CBA, ECF 15-7, arts. XIV, XV §§ 1, 4, XVI, at 21–22, 24, 30–31). Given the unrebutted allegations in the complaint that Avalanche failed to timely submit all the required remittance reports, contributions, dues, and other payments due under the CBA, the Court finds that Plaintiffs have sufficiently established Defendant Avalanche's liability for breaching the CBA.

### 3. *Fiduciary Liability*

Plaintiffs assert that Defendant Jablonowski is personally liable for the above violations as a fiduciary of the Fund's assets. Compl., ECF 1, ¶ 46.

Under ERISA,

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]

29 U.S.C. § 1109(a). The statute explains that "a person is a fiduciary with respect to a plan to the extent [that] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]" *Id.* § 1002(21)(A). To hold Defendant Jablonowski personally liable as a fiduciary, Plaintiffs must demonstrate "both that (1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009); *see Bd. of Trs. of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare Fund v. Harbor Island Contracting, Inc.* ("*Harbor Island Contracting*"), No. 13-CV-6075 (MKB) (RER), 2015 WL 1245963, at *3 (E.D.N.Y. Mar. 16, 2015).

Plaintiffs have demonstrated both elements here. Per the complaint, the CBA and Declaration of Trust for each of the funds provide that "assets of the Trust Fund shall not revert or be used for or inure to the benefit of any of the Employers" and that "all contributions required from an Employer shall, after their due date and until their payment over in full by the Employer to the Trust Fund[s], be deemed to constitute a trust fund in the possession of such Employer; and said Employer shall be responsible and liable therefore as a fiduciary." Compl., ECF 1, ¶ 45 (quotation marks omitted and alteration in original). While unpaid contributions are generally not considered plan assets, the Second Circuit in *In re Halpin* noted that "parties to an agreement are free to contractually define unpaid contributions otherwise," as the parties did here. *Sullivan v. M.A.C. Design Corp.*, No. 14-CV-1846 (NGG) (VVP), 2015 WL 5518456, at *3 (E.D.N.Y. Sept. 17, 2015) (discussing *In re Halpin*); *see In re Halpin*, 566 F.3d at 289 (holding that, "in the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan"). In *Sullivan*, a case arising under the same CBA, the court found that the instant language was "sufficient to designate the unpaid employer contributions as plan assets." 2015 WL 5518456, at *2. This reasoning applies with equal force here. Accordingly, the Court finds that the unpaid contributions are plan assets.

The complaint further alleges that Defendant Jablonowski "exercised 'authority or control respecting management or disposition'" over fund assets; was authorized to sign checks on behalf of Avalanche, "including checks that should have been submitted to the Funds"; and determined whether Avalanche would make its required contributions to the Funds, pay other corporate obligations, or transfer the Funds' assets to himself. Compl., ECF 1, ¶ 47 (quoting 29 U.S.C. § 1002(21)(A)). "These allegations, taken as true, are sufficient to establish [an individual defendant's] personal liability as

17

a fiduciary under ERISA." *Harbor Island Contracting*, 2015 WL 1245963, at *3; *see LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (finding liability as a fiduciary under ERISA when the defendants signed checks on the company's account and determined whether and how creditors would be paid).

For these reasons, the Court recommends finding Defendant Jablonowski a fiduciary and personally liable for Defendant Avalanche's deficient contributions under ERISA.

### III. Damages

Having found that Defendants' default constitutes an admission of liability with respect to both of Plaintiffs' claims and that entry of default is warranted, the Court now determines the appropriate damages. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a default judgment, a default "'is not considered an admission of damages'" (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158)). "The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).

"Section 502 of ERISA sets forth the damages that are recoverable for an employer's failure to remit contributions as required by Section 515 of ERISA." *Finkel v. Colony Elec. Co.* ("*Colony Elec.*"), No. 10-CV-2240 (FB) (LB), 2010 WL 5665042, at *4 (E.D.N.Y. Nov. 8, 2010), *report and recommendation adopted*, 2011 WL 346738 (E.D.N.Y. Feb. 1, 2011). Section 502, which was codified at 29 U.S.C. § 1132(g)(2), provides as follows:

18

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
>
> (A)   the unpaid contributions,
>
> (B)   interest on the unpaid contributions,
>
> (C)   an amount equal to the greater of —
>
>> (i)   interest on the unpaid contributions, or
>>
>> (ii)   liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E)   such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). For LMRA claims, plaintiffs may only recover the damages provided for in the contract itself. *See Colony Elec.*, 2010 WL 5665042, at *4.

Here, Plaintiffs assert that they are entitled to delinquent ERISA contributions and non-ERISA contributions, prejudgment interest, and liquidated damages.[7] Pls.' Mem., ECF 15-20, at 6–9. Plaintiffs also request auditor's fees, attorney's fees, and costs. *Id.* at 9–13. Specifically, Plaintiffs assert that they are entitled to the following damages: $155,941.00, representing the balance of delinquent contributions owed for the 2019–2022 period; $129,771.52 in estimated contributions owed for the 2023–2024 period; $50,478.10 in interest on unpaid contributions for the 2019–2022 period; $21,029.59 in interest on unpaid contributions for the 2023–2024 period; and liquidated damages in

---

[7] The Court notes that Plaintiffs requested various forms of injunctive relief in the complaint. *See* Compl., ECF 1, ¶¶ 24, 56; *id.* at 13–15 (wherefore clause). However, Plaintiffs do not seek such relief in the default motion papers. *See generally* Pls.' Mem., ECF 15-20. Accordingly, the requests for injunctive relief are deemed abandoned. *See Harbor Island Contracting,* 2015 WL 1245963, at *2 n.1.

the amount of $57,142.51. *See* Revised Statement of Damages, ECF 23 (calculating interest through Dec. 31, 2025); Revised Proposed Judgment, ECF 23-1. The Court recommends awarding damages as follows.

### A. Delinquent Contributions and Dues

The CBA requires Avalanche "to submit contributions, dues and various assessments for all employees performing bargaining unit work." Straus-Figueroa Affirmation, ECF 15-3, ¶ 16 (citing 2019–2023 CBA, ECF 15-7, arts. XIV, XV, XVI, at 21–31). For each employee that has authorized the employer to do so, the employer must deduct "the sum for each hour paid" that the Union has designated as the employees' dues and "transmit" them to the Union on a monthly basis. 2019–2023 CBA, ECF 15-7, art. XIV § 1, at 21–22. The employer must remit contributions to the ERISA and non-ERISA funds "weekly for the pay period immediately preceding, to be mailed on the same day wages are paid and for the same period." *Id.* art. XV, § 2, at 22. Remittance reports are due by the 15th day of the following month. *Id.* art. XV, § 4, at 23.

Plaintiffs have submitted a copy of the audit report for Defendant Avalanche's accounting and payroll records for the 2019–2022 period, prepared by the Plaintiffs' auditor, Kobgo Associates, Inc. ("Kobgo"), which is accompanied by the corresponding schedule of omissions. Audit Report, ECF 22; *see* Straus-Figueroa Affirmation, ECF 15-3, ¶ 25. The audit found that $204,941.00 in contributions had not been paid, and Defendant Avalanche thereafter paid $49,000.00 towards the overdue contributions, leaving a balance of $155,941.00. Straus-Figueroa Affirmation, ECF 15-3, ¶¶ 25–26; *see* Straus-Figueroa Suppl. Affirmation, ECF 24, ¶ 7. Plaintiffs have also submitted payment schedules, which outline the hourly benefit rates for the applicable time periods. *See* Payment Schedules, ECF 24-2. Having reviewed the affirmations filed in support of Plaintiffs' motion, together with the underlying exhibits submitted in support, the

20

Court finds that Plaintiffs have established Defendants' non-payment in the amount of $155,941.00, representing the unpaid dues and contributions owed for the 2019–2022 period ($204,941.00) minus the payment by Defendant Avalanche ($49,000.00).[8] *See Bd. of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund & Annuity Fund v. Super Eagle Contracting, Inc.*, No. 12-CV-0399 (KAM) (RER), 2013 WL 802034, at *2 (E.D.N.Y. Jan. 16, 2013) (finding analogous documentation to provide "a sufficient basis on which to award unpaid contributions"), *report and recommendation adopted*, 2013 WL 802847 (E.D.N.Y. Mar. 5, 2013).

Plaintiffs also seek damages in an amount equal to the estimated delinquent payments for the 2023–2024 period (December 2023 through February 2024 and September through October 2024). As discussed, if the employer does not submit to an audit, the CBA allows the Trustees to estimate contributions due "by using the highest number of employer's monthly hours for any month during the twelve (12) preceding

---

[8] Courts in the Second Circuit may rely on audits or auditor's reports for calculating damages, but must examine whether the auditor's assumptions and techniques were "reasonable." *Bricklayers Ins. & Welfare Fund v. Doran Tatrow Assocs., Inc.*, No. 18-CV-2475 (RJD) (ST), 2021 WL 7208997, at *4 (E.D.N.Y. Mar. 15, 2021) (quotation marks omitted) (collecting cases), *report and recommendation adopted*, Apr. 8, 2021 ECF Order Adopting R. & R., *appeal dismissed*, ECF 42. Here, the cover letter for the audit report indicates that the auditor "performed the agreed-upon procedures, as described in our payroll audit program . . . to determine the completeness and accuracy of remittance reports filed and contributions paid under the terms of the" CBA. Audit Report, ECF 22, at ECF p. 1. The Court has performed its own analysis of certain line entries in the audit report and is satisfied that Kobgo properly determined the amount of contributions owed. For example, analyzing the delinquent contributions to the Defense Fund, Kobgo calculated that 248 hours had not been reported for the period of January 1, 2019, through June 30, 2019. *Compare* Audit Report, ECF 22, at ECF p. 3 (payroll period "7/1/18–6/30/19"), *with id.* at ECF p. 5 (adding 96, 96, 24, and 32 delinquent hours to calculate 248 hours not reported in February and April 2019). The applicable benefit rate for contributions to the Defense Fund during this period was $0.17. *See* Payment Schedule, ECF 24-2, at ECF p. 1. Kobgo correctly assessed the total delinquency associated with that period as $42.16. Audit Report, ECF 22, at ECF p. 3 (248 x $0.17 = $42.16). *See Bricklayers Ins. & Welfare Fund v. Alpha Omega Bldg. Corp.*, No. 19-CV-2600 (ERK) (RLM), 2022 WL 18858966, at *7 n.13 (E.D.N.Y. Nov. 10, 2022) (performing selective examination of the auditor's calculations), *report and recommendation adopted*, Nov. 30, 2022 ECF Order Adopting R. & R.

months or during the last twelve (12) months for which contributions reports were filed, whichever monthly number of hours is greater." Compl., ECF 1, ¶ 27; *see* 2019–2023 CBA, ECF 15-7, art. XV § 7(b), at 24. Here, although Kobgo was able to audit the 2019–2022 timeframe, Defendants have not submitted to an audit or provided remittance reports for the 2023–2024 pay periods at issue. *See* Compl., ECF 1, ¶¶ 11, 20–24, 26. Accordingly, under the terms of the CBA, Plaintiffs are entitled to estimate delinquent contributions in the manner described. Plaintiffs submit that the number of hours reported in October 2023, 736, should be used. Compl., ECF 1, ¶ 28. Multiplying the applicable hourly rates for the benefit contributions for the months at issue, Plaintiffs calculate the total sum owed for the months of December 2023 through February 2024 and September 2024 through October 2024 as $129,771.52. *Id.* ¶¶ 29–30.

Plaintiffs' submissions illustrate that the applicable hourly benefit rate for December 2023 through February 2024 was $34.74, while the rate for September and October 2024 was $36.05. *See id.* ¶ 29; Payment Schedule, ECF 24-2, at ECF pp. 6 (July 1, 2023 to June 30, 2024; summing the "mechanic hourly fringes" (capitalization modified)), 7 (July 1, 2024 to June 30, 2025; same). Multiplying these hourly rates by the number of months these rates applied and the asserted number of delinquent hours, the Court likewise calculates the damages total as $129,771.52. ([$34.74 x 3 months x 736 = $76,705.92] + [$36.05 x 2 months x 736 = $53,065.60] = $129,771.52). Accordingly, the Court recommends awarding Plaintiffs $129,771.52 in estimated delinquent contributions for 2023–2024.

In light of the foregoing, the Court respectfully recommends awarding Plaintiffs **$285,712.52** in damages, representing the unpaid contributions associated with the 2019–2022 period ($155,941.00) and the 2023–2024 period ($129,771.52).

22

**B. Prejudgment Interest**

ERISA states that "interest on unpaid contributions shall be determined by using the rate provided under the plan," if any. 29 U.S.C. § 1132(g)(2). The CBA provides that a delinquent employer is liable for interest at a rate of 10 percent of all unpaid contributions, "or at the maximum legal rate, whichever is greater." 2019–2023 CBA, ECF 15-7, art. XV, § 7(e), at 25. With regard to the non-ERISA funds, dues, and related assessments, because the LMRA allows labor unions "to sue in federal court for breaches of state-law labor contracts," generally, the nine-percent annual interest rate under N.Y. C.P.L.R. § 5004 is "appropriate" when calculating prejudgment interest on non-ERISA contributions. *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs, Loc. 14-14B v. Superior Site Work, Inc.* ("*Superior Site Work*"), No. 15-CV-0543 (MKB), 2017 WL 639248, at *8 (E.D.N.Y. Feb. 16, 2017) (citing 29 U.S.C. § 185(a)). However, where, as here, the parties agreed to award a higher percentage in interest upon the employer's failure to remit payment, they should be bound to the terms of their agreement. *See Annuity, Pension, Welfare & Training Funds of I.U.O.E. Loc. 14-14 B v. Falcon Steel Co.*, No. 16-CV-0020 (RRM), 2016 WL 8465987, at *6 (E.D.N.Y. Apr. 13, 2016) (approving award of 15 percent interest on non-ERISA contributions as "the interest rate to which the parties agreed"), *report and recommendation adopted*, 2017 WL 945851 (E.D.N.Y. Mar. 9, 2017). Because the CBA here allows an interest rate of 10 percent or "the maximum legal rate," the annual 10 percent rate prescribed in the CBA applies to calculating the interest associated with the delinquent ERISA contributions and non-ERISA contributions. 2019–2023 CBA, ECF 15-7, art. XV, § 7(e), at 25; *see Bricklayers Ins. & Welfare Fund v. Precise Brick, Inc.*, No. 08-CV-4362 (CBA) (CLP), 2009 WL 4891821, at *6–7 (E.D.N.Y. Dec. 17, 2009) (allowing 10 percent prejudgment interest rate on ERISA and non-ERISA delinquent contributions based on the CBA's terms).

23

Plaintiffs have used the following formula to calculate prejudgment interest with respect to the unpaid balance: (amount due) x (interest rate per month, expressed as 0.1/12 or 0.0083) x (months out from due date). Straus-Figueroa Suppl. Affirmation, ECF 24, ¶ 10; Straus-Figueroa Affirmation, ECF 15-3, ¶ 31; Revised Calculations, ECF 24-1, at ECF p. 2. For the 2019–2022 period, Plaintiffs assert that the due date was October 2022, representing when the $155,941.00 balance on the audit became due (in other words, excluding interest on the $49,000.00 paid by Avalanche), while the due dates for the months in the 2023–2024 period are calculated as of the first of the month following the month as to which the estimated payments are associated. *See* Revised Calculations, ECF 24-1, at ECF p. 2; 2019–2023 CBA, ECF 15-7, art. XV § 4, at 23. The number representing "months out" is calculated through December 31, 2025. *See* Straus-Figueroa Suppl. Affirmation, ECF 24, ¶ 10. Applying the 10 percent rate from each contribution period through December 31, 2025, Plaintiffs seek $71,507.69 in interest, representing $50,478.10 in interest on the 2019–2022 audit balance and $21,029.59 on the 2023–2024 estimated unpaid contributions. *See id.*; Revised Calculations, ECF 24-1, at ECF p. 2.

The Court observes that Plaintiffs have made an error in calculating their request for prejudgment interest by applying the 10 percent interest rate to unpaid ERISA contributions, non-ERISA contributions, and dues, even though under the terms of the CBA, the 10 percent interest rate only applies to unpaid ERISA and non-ERISA contributions. *See* 2019–2023 CBA, ECF 15-7, art. XV, § 7(e), at 25–26; *see also id.* §§ 7(h)-(i), at 27 (distinguishing between contributions owed to the funds and dues owed to the Union); *compare* Pls.' Mem., ECF 15-20, at 8–9 (asserting that Plaintiffs are owed only interest on the delinquent contributions owed to the funds at the 10 percent rate), *with* Straus-Figueroa Affirmation, ECF 15-3, ¶ 22 (asserting that Plaintiff Local 1 is owed

prejudgment interest on unpaid dues "pursuant to the common law and NY CPLR §§ 5001, 5004"). Because the CBA does not contemplate charging interest on delinquent dues, the nine percent rate under the N.Y. C.P.L.R. § 5004 is appropriate for calculating prejudgment interest on dues and assessments owed to the Union, while the 10 percent interest rate under the CBA is appropriate for the ERISA and non-ERISA contributions. *Superior Site Work*, 2017 WL 639248, at *8. Accordingly, the Court recalculates Plaintiffs' prejudgment interest, using the 10 percent rate for the delinquent ERISA and non-ERISA contributions, and the nine percent rate for the delinquent dues.

Of the remaining audit balance for the 2019–2022 period, Plaintiffs calculate that $143,042.00 is attributable to delinquent ERISA contributions, $2,693.35 is attributable to delinquent non-ERISA contributions, and $10,205.63 is attributable to delinquent dues.[9] *See* Revised Calculations, ECF 24-1. Of the estimated contributions for the 2023–2024 period, $116,104.00 is attributable to estimated ERISA contributions, $2,318.40 is attributable to estimated non-ERISA contributions, and $11,349.12 is attributable to estimated dues.[10] *See* Revised Calculations, ECF 24-1; Payment Schedules, ECF 24-2

---

[9] The Court observes a two-cent discrepancy between the total of these three numbers ($143,042.00 + $2,693.35 + $10,205.63 = $155,940.98) and the number Plaintiffs represent as the total unpaid balance of the 2019–2022 audit report, minus Defendants' $49,000 payment ($155,941.00). *See* Straus-Figueroa Suppl. Affirmation, ECF 24, ¶ 7. In the context of a delinquency of this size and the likelihood that the discrepancy is attributable to rounding errors, the Court disregards this discrepancy as *de minimis*, and allocates two cents to the amount due on ERISA contributions based on the audit throughout this opinion.

[10] The Court verified the accuracy of Plaintiffs' calculations by multiplying the estimated hours (736) by the sum of the applicable hourly benefit rates for the ERISA funds, non-ERISA funds, and dues for each month in the 2023–2024 period in which Plaintiffs assert contributions were not paid, then totaling each category of unpaid contribution. For example, in December

(identifying applicable benefit rates); *cf.* Straus-Figueroa Suppl. Affirmation, ECF 24, ¶ 4

(segregating ERISA from non-ERISA contributions).

The Court recommends an award of prejudgment interest, using the

methodology Plaintiffs propose, adapted to apply the nine percent rate (expressed as

0.09/365 or 0.00024658) to the delinquent dues, calculated through December 31, 2025.

So recalculated, the Court recommends granting Plaintiffs **$66,514.48** in prejudgment

interest. The Court also recommends awarding additional prejudgment interest at a rate

of **$77.68** per day,[11] calculated from January 1, 2026, through the date that the Clerk of

Court enters final judgment.

## C. Liquidated Damages

Plaintiffs also request liquidated damages, as permitted under ERISA. *See* 29

U.S.C. § 1132(g)(2)(C). ERISA permits an award of liquidated damages in "an amount

equal to the greater of . . . interest on the unpaid contributions," *id.* § 1132(g)(2)(C)(i), or

"'an amount not in excess of 20 percent'" of the unpaid contributions "as of the day the

---

2023, the sum of the applicable hourly benefit rates for all the ERISA Funds was $31.05. *See* Revised Calculations, ECF 24-1, at ECF p. 1. Multiplying $31.05 by 736 hours equals $22,852.80 in estimated unpaid contributions to the ERISA Funds for December 2023. The Court observes, however, that the inconsistency in Plaintiffs' submissions, *see supra* note 1, "caused the [C]ourt to expend its own time to conduct legal research and calculate interest rates and other figures accurately," *Trs. of United Teamster Fund v. J.B. Mufflers, Inc.*, No. 07-CV-1425 (SJ) (RML), 2008 WL 2114955, at *6 (E.D.N.Y. May 19, 2008). Plaintiffs are advised to draft their pleadings and motions with more precision henceforth.

[11] The Court calculates the daily prejudgment rate according to the following table:

|  | Balance | Daily Interest Rate | Daily Prejudgment Interest Amount |
|---|---|---|---|
| Total Delinquent ERISA + Non-ERISA Contributions | $264,157.77 | 0.00027397 | $72.37 |
| Total Delinquent Dues | $21,554.75 | 0.00024658 | $5.31 |
| **Total** |  |  | **$77.68** |

action was filed." *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC*, No. 21-CV-2518 (CBA) (JRC), 2022 WL 4642735, at *7 (E.D.N.Y. Sept. 15, 2022) (quoting 29 U.S.C. § 1132(g)(2)(C)(ii)), *report and recommendation adopted*, 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022), *supplemented*, 2022 WL 11727626 (E.D.N.Y. Oct. 20, 2022). The CBA provides for a 20 percent liquidated damages award where the employer does not timely remit contributions, an audit reveals a deficiency, legal counsel assists in collection, and litigation is initiated. *See* 2019–2023 CBA, ECF 15-7, art. XV, § 7(e), at 25–26. This remedy is within the liquidated damages allowed under ERISA. *See* 29 U.S.C. § 1132(g)(2)(C)(ii).

Here, Plaintiffs request liquidated damages equal to 20 percent of the unpaid ERISA contributions, asserting that this amount is larger than the interest on the ERISA contributions. Plaintiffs calculate that of the total unpaid contributions, $259,146.02 is attributable to contributions owed to the ERISA funds only. *See* Revised Calculations, ECF 24-1, at ECF pp. 1 ($143,042.02 ERISA audit balance (2019–2022)[12] + $116,104.00 estimated ERISA contributions (2023–2024)), 3 (total ERISA); *see* Straus-Figueroa Suppl. Affirmation, ECF 24, ¶ 11.

The Court observes that 10 percent interest on the ERISA contributions, calculated from the date the contributions became due through December 31, 2025, equals $65,112.61, which is larger than 20 percent of $259,146.02 ($51,829.20). Because the 10 percent interest owed on the unpaid ERISA contributions is larger than 20 percent of that principal, the Court finds that Plaintiffs have established their entitlement to liquidated damages on Defendants' unpaid ERISA contributions in the

---

[12] As discussed *supra* note 9, the Court adds two cents to the outstanding ERISA delinquency from this period to address a rounding discrepancy.

amount of **$65,112.61**.[13] 29 U.S.C. § 1132(g)(2)(C)(i); *see Gesualdi v. Burtis Constr. Co.*, No. 20-CV-4864 (ARR) (ARL), 2021 WL 6550952, at *4 (E.D.N.Y. Dec. 28, 2021), *report and recommendation adopted*, 2022 WL 173548 (E.D.N.Y. Jan. 19, 2022); *Trs. of Bldg. Trades Educ. Benefit Fund v. Laura Elec. Lighting & Maint. Serv. Inc.*, No. 20-CV-3700 (DRH) (JMW), 2021 WL 6294391, at *4 (E.D.N.Y. Dec. 14, 2021), *report and recommendation adopted*, 2022 WL 59655 (E.D.N.Y. Jan. 6, 2022); *Trs. of Bldg. Trades Educ. Benefit Fund v. Culver Elec., LLC*, No. 17-CV-3448 (DRH) (ST), 2021 WL 1911122, at *4 (E.D.N.Y. Apr. 19, 2021), *report and recommendation adopted*, 2021 WL 1906486 (E.D.N.Y. May 12, 2021).

---

[13] The Court calculates the liquidated damages according to the following table, using October 1, 2022, as the due date for the 2019–2022 period based on the audit balance, and using the first of the month after the payments were due as the due date for the estimated periods in 2023 and 2024.

| Contribution Period | Contribution Amount (736 hours x ERISA contrib. amount for the 2023–2024 periods) | Monthly Interest Rate (0.1/12 or 0.0083) | Due Date | Months Out as of 12/31/2025 (months overdue) | Interest through 12/31/2025 |
|---|---|---|---|---|---|
| 2019–2022 Audit Balance | $143,042.02 | 0.0083 | 10/1/2022 | 39 | $46,302.70 |
| December 2023 | $22,852.80 | 0.0083 | 1/1/2024 | 24 | $4,552.28 |
| January 2024 | $22,852.80 | 0.0083 | 2/1/2024 | 23 | $4,362.60 |
| February 2024 | $22,852.80 | 0.0083 | 3/1/2024 | 22 | $4,172.92 |
| September 2024 | $23,772.80 | 0.0083 | 10/1/2024 | 15 | $2,959.71 |
| October 2024 | $23,772.80 | 0.0083 | 11/1/2024 | 14 | $2,762.40 |
| **Total** | | | | | **$65,112.61** |

### D. Other Awards

#### 1. Attorney's Fees

Although ERISA mandates the recovery of attorney's fees in any successful action to recover delinquent contributions, courts have broad discretion in determining what constitutes a reasonable attorney's fee. *See* 29 U.S.C. § 1132(g)(2)(D); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany* ("*Arbor Hill*"), 522 F.3d 182, 183–84, 190 (2d Cir. 2008). In this Circuit, a reasonable attorney's fee is based on a number of factors, including the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, awards given in similar cases, and the experience, reputation, and ability of the attorney. *See Arbor Hill*, 522 F.3d at 186 n.3, 190. Further, under the "forum rule," courts typically assess an attorney's requested hourly rate by comparison to other rates awarded in the district in which the reviewing court sits. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–76 (2d Cir. 2009).

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended to determine the presumptively reasonable fee. *See Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" (quoting *Arbor Hill*, 522 F.3d at 183) (internal quotation marks omitted)). With very limited exceptions, requests for attorney's fees in the Second Circuit "should normally be disallowed unless accompanied by contemporaneous time records." *Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (quotation marks omitted); *see also Universal Elec.*, 970 F. Supp. 2d at 127. Whether the hours expended on a matter are reasonable is a separate inquiry from the reasonableness of

29

the hourly rate, and should be scrutinized with the same care. *See Bay Park Ctr. for Nursing & Rehab. LLC v. Philipson*, 659 F. Supp. 3d 312, 317–18 (E.D.N.Y. 2023).

In this case, counsel seeks $11,722.50 in attorney's fees, representing 37.5 hours billed by a partner, Sylvie Straus-Figueroa, and one hour by a senior partner. *See* Straus-Figueroa Affirmation, ECF 15-3, ¶ 34; Contemporaneous Time Records, ECF 15-14; *see also* Affirmation of Att'y's Servs., ECF 15-15, ¶ 4 (representing that the total attorney's fee for this matter through July 24, 2025, was $10,594.00, *contra* the totals in counsel's Contemporaneous Time Records, ECF 15-14). Plaintiffs' counsel represents that both her and the senior partner's billing rates were $285.00 per hour through May 2024, and $305.00 per hour through the present. Affirmation of Att'y's Servs., ECF 15-15, ¶ 3.

Here, the Court respectfully recommends awarding fees based on the requested hourly rates. First, counsel's hourly rates are reasonable given similar rates awarded in this context. "In ERISA cases, attorney's fees have been awarded in the Eastern District of New York at an hourly rate of $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior associates, and up to $90.00 for non-attorney support staff." *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC*, No. 24-CV-0561 (CBA) (JAM), 2025 WL 447731, at *17 (E.D.N.Y. Jan. 15, 2025) (quotation marks omitted), *adopted sub nom. Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. INKA Constr. LLC*, 2025 WL 777108 (E.D.N.Y. Mar. 11, 2025); *see also Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232–33 (2d Cir. 2006) (noting that fee awards must take into account "the current market rate" in the district). *But see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 242–43 (E.D.N.Y. 2025) (noting that attorney's fees may be adjusted for inflation). Although counsel did not provide background information about Ms. Straus-Figueroa's credentials or expertise, the Court notes that rates of $285 and $305 comport with

30

previous fee awards that courts in this district have awarded her, taking inflation into account. *See Harbor Island Contracting*, 2015 WL 1245963, at *6 (awarding $200 per hour to Ms. Straus-Figueroa in 2015). Therefore, the Court recommends finding Plaintiffs' requested hourly rates reasonable, as to Ms. Straus-Figueroa.

Plaintiffs represent that counsel spent 38.5 hours working on this case. The Court observes that this slightly "exceeds what is typical for similar ERISA-default matters." *Gesualdi v. Seacost Petrol. Prods., Inc.* ("*Seacost Petrol. Prods.*"), 97 F. Supp. 3d 87, 107–08 (E.D.N.Y. 2015) (collecting cases finding 21.1 to 32.4 hours reasonable, and finding 39.55 hours excessive); *see Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ges Bake Shop, Inc.* ("*Ges Bake Shop*"), No. 13-CV-0728 (FB) (CLP), 2014 WL 1159821, at *10 (E.D.N.Y. Mar. 21, 2014) (finding 31.2 hours of work reasonable in an ERISA default case). Additionally, Plaintiffs' submissions "fail to offer an explanation for the excessive amount of time spent on [what] appears to be a straightforward and unopposed ERISA-default case, without any complex factual or legal issues." *Seacost Petrol. Prods.*, 97 F. Supp. 3d at 107; *see* Straus-Figueroa Affirmation, ECF 15-3, ¶¶ 34–39; Contemporaneous Time Records, ECF 15-14; *see also* Affirmation of Att'y's Servs., ECF 15-15.

Moreover, the Court notes that although Ms. Straus-Figueroa did not request an attorney's fee award for time spent correcting the redactions issue, that the audit report was submitted to the Court with workers' personal identifying information unredacted or improperly redacted *twice* suggests that "Plaintiffs' counsel's time was not spent carefully preparing and proofreading the dispositive motion papers that account for the majority of the work on this case." *Seacost Petrol. Prods.*, 97 F. Supp. 3d at 107. This suggestion is underscored by two additional observations. First, Plaintiffs' initial submissions were "missing information necessary for the Court to assess Plaintiffs['] entitlement to their requested relief," requiring the Court to issue an order for

supplemental filings. Jan. 6, 2026 ECF Order. Second, both Plaintiffs' initial and supplemental filings included ambiguities and inconsistencies, as discussed *supra* notes 1 and 10, which required that the Court expend its own scarce resources to verify the accuracy of Plaintiffs' calculations. *Compare* Straus-Figueroa Suppl. Affirmation, ECF 24, ¶ 4 (representing that the IPF PPA Special Assessment Fund is *not* covered by ERISA), *with* Revised Calculations, ECF 24-1, at ECF p. 4 (representing that the IPF PPA Special Assessment Fund *is* covered by ERISA); *see id.* at ECF p. 1 (calculating prejudgment interest on delinquent ERISA contributions by including the IPF PPA Special Assessment Fund benefit rate). Courts in this district have found similar inconsistencies to provide an adequate basis for reducing an award of attorney's fees. *See Trs. of United Teamster Fund v. J.B. Mufflers, Inc.*, No. 07-CV-1425 (SJ) (RML), 2008 WL 2114955, at *6 (E.D.N.Y. May 19, 2008) (finding a 50 percent reduction sufficient to "account for the various filing deficiencies"); *Gesualdi v. Stallone Testing Lab'ys, Inc.*, No. 10-CV-0646 (ENV) (LB), 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011) (observing that "calculation errors and poor drafting merit fee reductions by casting doubt on the accuracy of a party's submissions to the court and forcing the court to expend resources unnecessarily as a result").

The Court observes yet another issue with Plaintiffs' filings requesting an award of attorney's fees. Plaintiffs' counsel's contemporaneous time records appear to have been submitted on behalf of Ms. Straus-Figueroa alone, but also includes a time summary for one hour expended by a "senior partner." Affirmation of Att'y's Servs., ECF 15-15, ¶¶ 3, 4 (representing that Ms. Straus-Figueroa consulted with a "Sr. Partner"); Contemporaneous Time Records, ECF 15-14 ("Contemporaneous Time Record *of Sylvie Straus-Figueroa*" (emphasis added)). Counsel's filings do not identify this senior partner by their full name, nor offer their credentials. *Compare* Att'y Billing

Records, ECF 15-13 at ECF pp. 1 (letterhead identifying William Rothberg as an attorney at the firm Rothberg, Straus & Contrubis), 2 (time summary identifying one billing professional as "Rothberg"), *with* Contemporaneous Time Records, ECF 15-14 *and* Affirmation of Att'y's Servs., ECF 15-15. Such omissions have been found to likewise provide a sufficient basis to reduce the requested fee award. *See Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC.*, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008) ("Where the moving party fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested.").

In light of (1) the unexplained deviation from the number of hours courts in this district typically consider reasonable for an unopposed ERISA default; (2) Plaintiffs' incomplete and inconsistent submissions; and (3) the failure to submit sufficiently detailed billing records that would allow the Court to analyze the reasonableness of each billing professional's hours, the Court recommends reducing the requested fee award by 10 percent. Accordingly, the Court recommends an award of **$10,550.25** in attorney's fees. Ms. Straus-Figueroa is further advised that failure to provide information regarding the background and qualifications of any billing professionals involved in future applications may again result in an across-the-board reduction in the fee award. *Ahn v. Sun Cleaners Inc.*, No. 19-CV-5919 (DLI) (PK), 2022 WL 586022, at *11 (E.D.N.Y. Feb. 18, 2022) (reducing the hourly rate for a billing professional where counsel did not include a description of the billing professional's credentials), *report and recommendation adopted*, 2025 WL 845552 (E.D.N.Y. Mar. 18, 2025).

    2.  *Costs*

"When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred

by the attorneys and charged to clients." *Ret. Fund of Loc. 1482 Paint & Allied Prods. Mfrs. v. N. Adhesives, Inc.*, No. 19-CV-5609 (MKB) (RER), 2020 WL 6370060, at *5 (E.D.N.Y. May 27, 2020) (citing *Div. 1181 Amalgamated Transit Union–N.Y. Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 628 (E.D.N.Y. 2017)). Here, Plaintiffs request $769.00 in costs, representing the $405.00 filing fee and $364.00 in fees pertaining to service of process. Pls.' Mem., ECF 15-20, at 13; *see* Service Billing Records, ECF 15-16. The Court may take judicial notice of the $405.00 filing fee. The Court finds the service of process costs to be documented and reasonable and, consequently, recommends awarding **$769.00** in costs. *See Ges Bake Shop*, 2014 WL 1159821, at *11.

### 3. Audit Costs

Plaintiffs also request that Defendants be charged "'the full cost of the audit,'" $5,600.00, alleging that under the CBA, when an employer's account is "'substantially delinquent, said Employer may be charged the full cost of such audit.'" Pls.' Mem., ECF 15-20, at 9–10 (quoting 2019–2023 CBA, ECF 15-7, art. XV, § 7(j), at 27). Courts routinely award such fees as a form of "other legal or equitable relief" available under ERISA. 29 U.S.C. § 1132(g)(2)(E); *see King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 172–73 (E.D.N.Y. 2004). Accordingly, the Court recommends finding the award of auditor's fees justified, and awarding **$5,600.00** in audit costs. *Sullivan v. A & Z Constr. Co.*, No. 12-CV-2825 (NGG) (MDG), 2016 WL 4991541, at *9 (E.D.N.Y. Mar. 11, 2016), *report and recommendation adopted*, 2016 WL 5061104 (E.D.N.Y. Sept. 16, 2016).

### E. Post-Judgment Interest

Although Plaintiffs here did not specifically request post-judgment interest, the Second Circuit has held that an award of post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961(a) is "mandatory." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Section 1961(a) provides that post-judgment interest

"shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). "Moreover, post-judgment interest 'shall be computed daily [from the date of judgment] to the date of payment.'" *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Savings Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *3 (E.D.N.Y. Jan. 13, 2020) (alteration in original) (quoting 28 U.S.C. § 1961(b)), *report and recommendation adopted*, 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020). Accordingly, the Court respectfully recommends that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961 on all sums awarded from the date judgment is entered to the date of payment.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted. In addition, the Court recommends finding Defendant Jablonowski personally liable for the final judgment as a fiduciary, and accordingly holding Defendants jointly and severally liable. Plaintiffs should be awarded damages as follows: (1) **$285,712.52** in unpaid principal, representing the $155,941.00 audit balance for the 2019–2022 delinquency, and $129,771.52 in estimated delinquent contributions associated with the 2023–2024 period (inclusive of delinquent contributions to the ERISA funds ($116,104.00) and non-ERISA funds ($2,318.40), and delinquent dues ($11,349.12)); (2) **$66,514.48**, representing 10 percent interest on the unpaid ERISA and non-ERISA contributions and nine percent interest on the unpaid dues; (3) **$65,112.61** in liquidated damages under ERISA, in an amount equal to 10 percent interest on the unpaid ERISA contributions; (4) **$10,550.25** in attorney's fees; (5) **$769.00** in reimbursable costs and expenses; and (6) **$5,600.00** in audit costs, for a

35

total of **$434,258.86**. The Court also recommends awarding additional prejudgment interest at a rate of **$77.68** per day through the date that the Clerk of Court enters final judgment, on the $285,712.52 in outstanding principal. Plaintiffs should also be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961 on the total sum awarded on the date of judgment, accruing through the date of payment.

*   *   *   *   *

This report and recommendation will be filed electronically and a copy sent by mail to Defendants. As a courtesy, the Court also respectfully directs Plaintiffs to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same by February 10, 2026. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Natasha C. Merle at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated:  Brooklyn, New York
      February 6, 2026

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

36